1
2
3
4
5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF CALIFORNIA

7

8   ALEXANDRA MADELYN PAGE,              Case No. 1:22-cv-00965-JLT-CDB  (SS)

9              Plaintiff,               FINDINGS AND RECOMMENDATION TO
                                        GRANT PLAINTIFF'S MOTION FOR
10         v.                           SUMMARY JUDGMENT AND REMAND
                                        THIS CASE FOR FURTHER PROCEEDINGS
11  COMMISSIONER OF SOCIAL              PURSUANT TO SENTENCE FOUR OF 42
    SECURITY,                           U.S.C. §405(g)
12
               Defendant.               (Doc. 21)
13

14

15         Plaintiff Alexandra Madelyn Page ("Plaintiff") brought this action under 42 U.S.C.

16  §§405(g) and 1383(c)(3) to review a decision of the Commissioner of Social Security

17  ("Commissioner") denying her claim for child disability benefits for lack of disability.  (Doc. 1).

18  Plaintiff filed a motion for summary judgment on March 17, 2023.  (Doc. 21).  The

19  Commissioner filed a responsive brief on June 9, 2023, and on July 17, 2023, Plaintiff filed a

20  reply.  (Doc. 27).  For the reasons set forth below, the undersigned recommends that this action be

21  remanded to the Commissioner for further proceedings.[1]

22                    **I.      BACKGROUND**

23         Plaintiff was born on May 5, 1998, and protectively filed her application for child's

24  insurance benefits on April 21, 2020, alleging disability beginning on October 10, 2001.  (AR 15,

25  17).  Her claim was denied initially on July 2, 2020, and again upon reconsideration on October

26  27, 2020. (AR 69).  Plaintiff filed a written request for a hearing, which was received on

27  _____

28         [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and
    Local Rule 302 (E.D. Cal. 2019).

1   November 5, 2020. (AR 105).  On March 25, 2021, the assigned administrative law judge

2   ("ALJ") held a telephonic hearing due to the COVID-19 pandemic occurring at the time. (AR 31-

3   52).   Plaintiff agreed to appear by telephone, and appeared with her attorney, Sima G. Aghai.  An

4   impartial vocational expert ("VE") also testified during that hearing.  The ALJ issued an

5   unfavorable decision on June 30, 2021. (AR 26).  Plaintiff sought review by the appeals council,

6   which affirmed the ALJ.  (AR 1).

7        As part of her ruling, the ALJ reviewed Plaintiff's claimed onset date of October 10, 2001,

8   and found that applicable benefits are not payable until Plaintiff reached age 18.  (AR 15).  Thus,

9   pursuant to section 202(d) of the Social Security Act, the ALJ adjudicated the period from the

10   potential onset date of April 30, 2016, until plaintiff reached age 22.  (AR 15).

11       The ALJ then engaged in the five-step sequential evaluation process prescribed by 20

12   C.F.R. § 404.1520.[2]  At step one, the ALJ found that Plaintiff has not engaged in substantial

13   gainful activity since April 30, 2016, the potential onset date.  (AR 17).  At step two, the ALJ

14   determined that Plaintiff's autism spectrum disorder, attention deficit hyperactivity disorder

15   (ADHD), Tourette's, tic disorder, anxiety, depression, psychosis, and gender dysphoria were

16   severe impairments that significantly limited her ability to perform basic work activities. (AR 17).

17       At step three, the ALJ found that Plaintiff's impairments, considered singly or in

18   combination, did not meet or medically equal the criteria of any listings, including 12.03, 12.06,

19   12.10 or 12.11.  (AR 18).  The ALJ next analyzed whether paragraph B criteria were satisfied.[3]

20   Plaintiff had no limitation in understanding, remembering, or applying information.  (AR 18

21   citing AR 501-534, 535-66, 578-78).  The ALJ found a moderate limitation in interacting with

---

22
23   [2]      The ALJ's decision is summarized herein to the extent it is relevant to the issues brought
     for review by Plaintiff.

24   [3]      The "paragraph B criteria" evaluates mental impairments in the context of four broad
     areas of functioning: (1) understanding, remembering, or applying information; (2) interacting
25   with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing
     oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in
26   each of the four areas of functioning is identified as either "no limitation," "mild," "moderate,"
     "marked," or "extreme."  *Id.* To satisfy the paragraph B criteria, a claimant must have an
27   "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in
28   at least two of the areas of mental functioning.  *Id.*

others (*Id*. citing AR 189-90, 491, 552).  She found significant that Plaintiff attended college without any marked difficulties documented in social interaction.  The ALJ further determined that there was insufficient evidence to establish that Plaintiff had a serious impediment in her ability to work with supervisors, co-workers or the public.

The ALJ found a moderate limitation with Plaintiff's ability to concentrate, persisting or maintaining pace.  (AR 17).  Plaintiff engaged in a wide range of daily activities which showed that she could at least undertake simple, repetitive tasks.  (*Id*. citing AR 183-193, 578-88). Lastly, the ALJ analyzed Plaintiff's ability to adapt or manage herself and found a moderate limitation. The ALJ again determined there was insufficient evidence to find a serious limitation on Plaintiffs ability to regulate emotions, control behavior, or maintain well-being in a work setting on a sustained basis.  (AR 19).

The ALJ also considered whether the paragraph C criteria were satisfied and found that there was insufficient evidence of a medically documented history of Plaintiff's disorders for over a period of at least two years, and evidence of medical treatment, therapy, or some other highly structured setting that demonstrated minimal capacity for Plaintiff to adapt to changes in her environment.  *Id*.

The ALJ further determined Plaintiff's residual functional capacity ("RFC") as follows:

> . . . [T]he undersigned finds that, prior to attaining age 22, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no fast paced production requirements such as an assembly line; occasional interaction and occasional coordination with coworkers; incidental contact with the public; and work with only occasional changes in work routine.

(AR 19).  At step four, the ALJ considered Plaintiff's symptoms and the extent to which those symptoms could be accepted as consistent with the objective medical evidence and other evidence on the record.   (AR 19 citing 20 C.F.R § 404.1529 and SSR 16-3p).  In particular, the ALJ analyzed Plaintiff's allegations that her disorders prevented her from working, including Plaintiff's function report that she is enrolled in college, listens to music, does videos, watches televisions, and takes care of her dogs.  *Id*.  Plaintiff struggles with fasteners and has trouble doing her own hair but does not otherwise have problems with personal care.  Plaintiff can

3

1   prepare simple meals, housework, goes outside, goes shopping, and socializes with others.

2   However, Plaintiff reported low muscle tone which makes it difficult for her to lift heavy objects.

3   *Id*.  Plaintiff also reported poor coordination which makes squatting and writing legibly difficult.

4   However, Plaintiff also indicated that she drives and goes out alone, handles a savings account

5   and spends many hours a day doing photography, music, videos and creative editing.  (AR 20

6   citing AR 164-73, 183-93).

7          During the hearing, Plaintiff testified that she was attending college and that her grades

8   are As or Bs.  She further testified that she had been enrolled continuously as a full-time student

9   since fall 2016.  (AR 20, 38).  Plaintiff receives special accommodations at school such as a

10   handwriting alternative, she completes tests in a separate room with time-and-a-half and sits

11   towards the front of the classroom.  During the hearing, Plaintiff reported that she was a semester

12   away from graduating from college and received one A and three Bs last semester.  Plaintiff never

13   failed a class but did withdraw from a few.  (AR 20, 39).

14          Plaintiff also testified that it is difficult for her to interact with others due to her autism.

15   She has a difficult time speaking appropriately and she misinterprets the intentions of others. (AR

16   20; *see* AR 41).  She further testified that she has anxiety and difficulty with coordination,

17   distraction, and concentration.  Plaintiff testified that she suffers from Tourette's syndrome,

18   which triggers her anxiety, and that although she can drive, she cannot do so for long periods.

19   (AR 20).

20          The ALJ found that the record reflects Plaintiff's history of autism, ADHD, Tourette's

21   syndrome, anxiety, depression, psychosis, and gender dysphoria.  *Id*.  However, the ALJ also

22   found that the evidence does not support Plaintiff's claims that her limitations disable her to the

23   degree that she alleges.  *Id*.

24          The ALJ found Plaintiff's grades to be significant — stating that she graduated from high

25   school with a 4.3 GPA.  Plaintiff was removed from special education and placed in mainstream

26   classes with some special accommodations tailored towards her ADHD and fine motor skills.

27   (AR 21 citing AR 204-16).

28          Plaintiff underwent a psychological evaluation by Dr. Nick Garcia, PhD, which revealed

1    diagnoses of mild autism spectrum disorder, moderate social difficulties, mild repetitive

2    behaviors without language or intellectual impairments, GAD, and Tourette's disorder. (AR 21

3    citing 266-79, 592-93).  The evaluation further found that Plaintiff's full scale IQ score was 119.

4    Dr. Garcia found that Plaintiff's educational accommodations were appropriate and noted she

5    needed space to organize materials.  (*Id*. citing 266-79, 592-93).

6         Plaintiff's medical records from Advanced Medical Psychiatric Services Inc. ("AMPS")

7    dated September 1, 2016, indicate that her cognitive functioning was age appropriate, her

8    memory was intact, she was fully oriented, had normal insight, judgment, and displayed no signs

9    of anxiety.  (AR 282).  Another progress note dated December 22, 2016, reported Plaintiff

10   exhibited signs of improvement.  The note stated that Plaintiff was doing better, her tics were

11   decreasing, and she received excellent grades at school.  Plaintiff reported that her symptoms

12   improved and were less frequent/less intense. In addition, the mental health examination showed

13   that Plaintiff appeared anxious, but had an appropriate affect. (AR 286).

14        On May 16, 2017, Plaintiff reported that her Tourette's symptoms had improved and she

15   was no longer hearing voices. (AR 292).  She reported no anxiety and denied symptoms of

16   depression. (AR 296).  Another progress note from February 8, 2018, reports that Plaintiff felt

17   much better.  She denied hearing voices and paranoia and reported an overall improvement in her

18   symptoms. (AR 301-02).

19        Plaintiff reported for hormone therapy in November 2018 where she stated that she was

20   doing well and was happy with her changes.  (AR 520).  During a follow-up visit at AMPS in

21   December 2018, she stated that her anxiety has been controlled and that she was going to school.

22   Plaintiff's mental health examination reported mostly normal findings other than mild depression

23   and signs of anxiety.  (AR 314). In January 2019, Plaintiff demonstrated stable and uneventful

24   behavior and complied with her medication treatment.  (AR 375). In a medical report from March

25   2019, Plaintiff reported that she noticed an overall improvement in her functioning. (AR 540).

26        During a visit to Dr. C. Donell Crow, Plaintiff reported having a full school schedule and

27   mentioned that she engaged in more social activities.  (AR 491).  Office notes from a visit to

28   AMPS in November 2019, show that Plaintiff was happy, her anxiety was better, and she had a

boyfriend. (AR 552). She reported certain side effects from Abilify, but her mood and anxiety improved at a later visit in February 2020. Plaintiff's mental status examination was reported within normal limits. (AR 557).

Plaintiff's symptoms worsened after she experienced the loss of her father in March 2020. (AR 565, 583). By August 2020, she reported feeling better since restarting Abilify. She reported less anxiety, depression, restlessness, and sadness. Although she still experienced some depression, a progress note from AMPS indicates that her improvement level increased overall with an increase in her energy level and a decrease in her depression symptoms. (AR 586).

The ALJ also analyzed Plaintiff's range of activities and found them inconsistent with the extent of disability she alleges. (AR 22). Plaintiff reported doing college/schoolwork, caring for her dogs, doing housework, driving, shopping, doing photography, video editing, and spending time with friends, which the ALJ considered inconsistent with her alleged severity. (AR 183-93). The ALJ found that Plaintiff's range of activities is more consistent with her assigned RFC than an inability to do all types of work. (AR 22).

The ALJ further found that although Plaintiff claims that she has difficulty with her memory, completing tasks, concentration, understanding and following instructions, Plaintiff entered mainstream education (with some accommodations) and was able to maintain an impressive GPA without more intensive special education services. The ALJ further found that Plaintiff was a fulltime college student since Fall 2016, withdrew from only a few classes and gets A's and B's. (AR 183-93, 204-16, 280-316, 39). The ALJ acknowledged that Plaintiff receives accommodations for her college classes but found that accommodations for college courses do not persuasively establish that she would need the same accommodations for less demanding unskilled work.

The ALJ also found that Plaintiff's allegations were inconsistent with the treatment notes of record, which showed improvement with therapy and medication, as described above. The ALJ found that the treatment Plaintiff received was conservative in nature, and her treatment notes showed a trend in overall improvement in symptoms and functioning. The ALJ cited Plaintiff's therapy visit in December 2019, during which Plaintiff and her provider agreed that she

1    only needed therapy sporadically. (AR 500).

2         The ALJ found that the psychological evaluation performed by Dr. Alfred Collins in April

3    2006 to be less persuasive.  (AR 22-23).  Dr. Collins assessed Plaintiff for possible ADHD and/or

4    autistic spectrum disorder and diagnosed her with both.  (AR 590).   Dr. Collins also assigned

5    Plaintiff with a global assessment functioning (GAF) score of 40. The ALJ found Dr. Collins'

6    opinion to be less persuasive because it was performed about 10 years prior to the adjudicatory

7    period and his recommendations related to childhood functioning.  (AR 23)

8         The ALJ also evaluated the opinion of Dr. Nick Garcia. (AR 23).  Dr. Garcia evaluated

9    Plaintiff over a three-day period in March 2016 to determine whether she met the diagnostic

10   criteria for autism spectrum disorder.  Dr. Garcia interviewed Plaintiff, reviewed her medical

11   records, and administered several psychometric tests.  Dr. Garcia scored Plaintiff's verbal

12   comprehension as 127, perceptual reasoning as 127, working memory as 111, processing speed at

13   89, and full-scale IQ of 119.  (AR 274, 600).  Dr. Garcia diagnosed plaintiff with autism spectrum

14   disorder, GAD, and Tourette disorder.  Dr. Garcia also recommended that Plaintiff receive

15   educational accommodations, medication, therapy, and a social skills group. (AR 279, 605).  The

16   ALJ found Dr. Garcia's opinion to be somewhat persuasive because it was based on a thorough

17   evaluation and consistent with the record.  However, the ALJ found that Dr. Garcia's

18   recommendations were directed towards Plaintiff's needs to complete college level coursework

19   and did not address her limitations related to performing unskilled work.

20        The ALJ also considered Dr. C. Donel Crow's medical records, who treated Plaintiff from

21   September 2016 through November 2019 for gender dysphoria and tic disorder.  (AR 23).  Dr.

22   Crow found that Plaintiff's sensorimotor integration issues affected her ability to handle physical

23   tasks that depend on eye-hand coordination tasks and skills.  Dr. Crow also opined that Plaintiff's

24   anxiety, mood, and autism spectrum disorder would make it difficult to function in the areas of

25   social interaction and adaptation.  Dr. Crow ultimately opined that Plaintiff was not able to hold

26   gainful employment due to her emotional functioning. (AR 23 citing AR 379-80, AR 606-08,

27   660-664).

28        The ALJ found Dr. Crow's conclusion unpersuasive as Plaintiff's emotional impairments

had not significantly impaired her ability to complete college courses for four years and she was on track to graduate within the year.  (AR 23).  The ALJ also found that Plaintiff's RFC adequately accounted for her difficulties with social interaction and adaptation, and Dr. Crow's opinion did not persuasively establish greater limitations. (AR 23).

The ALJ further found that Dr. Crow's opinion was not consistent or supported by his treatment notes. The ALJ noted that Dr. Crow's visit notes in December 2019, indicated that Plaintiff had all A's for the semester, was involved in a romantic relationship, experienced significant improvement over the last three years, and needed therapy only sporadically. (AR 23; *see* AR 500).  The note also indicated Plaintiff's tic disorder symptoms were addressed well with medication.  The ALJ found Dr. Crow's opinion unpersuasive.

The ALJ reviewed a third-party function report completed by Christine Page, Plaintiff's mother.  The ALJ noted that the report constituted a lay opinion and observation of Plaintiff's functions, which she found to be adequately addressed by her RFC.  (AR 24).

The ALJ found the opinions of the state agency medical consultants to be persuasive since they were supported by medical evidence.  (AR 24).  The ALJ found that the subsequent evidence received after the state agency opinions was either duplicative or did not show a change that warrants greater limitations.

At step five of the sequential analysis, the ALJ adopted the VE's medical testimony which averred that Plaintiff could work as a hospital cleaner, kitchen helper, or cleaner. (AR 25).  Following the five-step sequential analysis, the ALJ found that Plaintiff could find work that exists in significant numbers and thus was not "disabled" within the meaning of the Social Security regulations.

## II.  LEGAL STANDARD

### A.    The Disability Standard

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a).  An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment …"[4]  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled.  *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).  Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on a claimant at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

Before making the step four determinations, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is the most a claimant can still do despite their limitations and represents an assessment based on all relevant evidence.  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2).  *E.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe.").  The RFC is not a medical opinion.  20 C.F.R. § 404.1527(d)(2).  Rather, it is a legal decision that is expressly reserved to the Commissioner.  20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

1    residual functional capacity.").

2          At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform

3    other work in the national economy given the claimant's RFC, age, education, and work

4    experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use

5    either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v.*

6    *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

7    Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining

8    credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950

9    F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

10          **B.      Standard of Review**

11          Congress has provided that an individual may obtain judicial review of any final decision

12   of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In

13   determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the

14   party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A

15   court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on

16   legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097

17   (9th Cir. 1999).

18          "Substantial evidence is relevant evidence which, considering the record as a whole, a

19   reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278

20   F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

21   1457 (9th Cir, 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v.*

22   *Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a

23   scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v.*

24   *CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

25          "[A] reviewing court must consider the entire record as a whole and may not affirm

26   simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153,

27   1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible

28   to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*,

1   950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  Even if the

2   ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  *Stout*,

3   454 F.3d at 1055-56.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

4   nondisability determinations."  *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008)

5   (quotation and citation omitted). The burden of showing that an error is not harmless "normally

6   falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396,

7   409 (2009).

### III.    DISCUSSION

8

9       Plaintiff raises two claims of error in her appeal.  First, she argues the ALJ erred in

10  discounting Plaintiff's subjective complaints.  Second, Plaintiff argues the ALJ erred in her RFC

11  assessment as she did not account for Plaintiff's educational accommodations in the formulation

12  of the RFC.  She claims that due to those errors, the ALJ's finding of "not disabled' is

13  unsupported by substantial evidence.

### A.    The ALJ Properly Addressed Plaintiff's Subjective Complaints

14

15      "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

16  must engage in a two-step analysis."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)

17  (citation omitted). The ALJ must first determine whether the claimant has presented objective

18  medical evidence of an underlying impairment which could reasonably be expected to cause the

19  severity of the symptoms the claimant alleges.  *Id.*  The claimant does not need to show that her

20  impairment "could reasonably be expected to cause the severity of the symptom she has alleged;

21  she need only show that it could reasonably have caused some degree of the symptom."  *Id.*

22  (quotation and citation omitted).  If the claimant meets this first step, and there is no evidence of

23  malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms

24  if the ALJ gives "specific, clear and convincing reasons" for the rejection.  *Id.* (quotation and

25  citation omitted).  *Accord Garrison*, 759 F.3d at 1015 n.18 ("The government's suggestion that

26  we should apply a lesser standard than "clear and convincing" lacks any support in precedent and

27  must be rejected.").

28      The ALJ may consider numerous factors in weighing a claimant's credibility, including

"(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In evaluating the credibility of symptom testimony, the ALJ must also consider the factors identified in Social Security Ruling (SSR) 16-3P.[5] (*Id.* citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)). *Accord Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P at *7. *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*,

---

[5] *Smolen* cites to SSR 88-13, which has since been superseded by SSR 16-3P (available at 2017 WL 5180304). *See Amy E.S. v. Commissioner*, 2022 WL 92939, at *9 n.4 (D. Or. Jan. 10, 2022).

12

260 F.3d 1044, 1049 (9th Cir. 2001). *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements.").  Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  "The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings are insufficient.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).

Plaintiff asserts that her GAD, ADHD, autism spectrum disorder, gender dysphoria, bipolar disorder, Tourette's syndrome, depression, and psychosis prevent her from working. (AR 20). The ALJ refuted this assertion based in part on the fact that Plaintiff has few problems with her personal care, prepares simple meals, does housework, goes outside by herself, shops and socializes with others. *Id.* The ALJ also found that Plaintiff can drive, handle a savings account, and spends considerable time doing photography, music, videos, and creative editing. (*Id.* citing AR 164-73; 183-93); *see* (AR 188).

During the hearing, Plaintiff testified she was currently attending college and received A's and B's, having been enrolled continuously as a full-time student since Fall 2016.  At the time of the hearing, Plaintiff was on track to graduate the next semester. *Id.*  The ALJ noted that Plaintiff received special accommodations, such as handwriting alternatives, testing in a separate room, and sitting towards the front of the classroom.

The ALJ's acknowledged Plaintiff's testimony that she has social deficiencies that make it difficult for her to interact with others, such as, for instance, speaking appropriately and interpreting others' intentions. (AR 20).  Plaintiff further testified that she suffers from anxiety and difficulty with coordination, distraction, and concentration, that her anxiety is exacerbated by her Tourette's syndrome, and that she can drive for short periods.  *Id.*

The ALJ ultimately found that the weight of the record does not support Plaintiff's claims of the disabling limitations to the degree alleged.  For example, the ALJ noted that although she

had accommodations, she graduated from high school with a high GPA and was even placed in mainstream classes. (*Id*. citing AR 204-216).  The ALJ also relied on Plaintiff's progress notes from December 2016, which documents Plaintiff's symptom improvement.  Another note from November 2019, showed that Plaintiff is happy, her anxiety is better, she is not sad, and she is in a relationship. (AR 21 citing AR 552).  Separately, the ALJ noted that Plaintiff suffers from side effects from Abilify and she reports her mood and anxiety is better in February 2020.  The ALJ also cited a mental health examination that reported that Plaintiff was within normal limits.  The ALJ cited to an increase in Plaintiff's symptoms after she had a family loss in March 2020 (AR 21 citing 565, 583), but by August 2020, she reported feeling better after restarting Abilify.  She reported less anxiety and depression, an overall improvement in energy, decreased scrying spells, and decreased feelings of hopelessness. (AR 22, 586).

Plaintiff further argues that the ALJ erred by determining that her allegations were inconsistent with her improvement in symptoms and functioning and that her treatment is conservative in nature. (Doc. 21 p. 21).  Plaintiff argues that the ALJ erred by picking out a few isolated instances of improvement and treated them as a basis for her conclusion that she can work. *Id.* (citing *Garrison*, 759 F.3d at 1017 and *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (finding that although a person may experience an improvement in her anxiety symptoms, she may nevertheless be unable to function in a workplace)).

The ALJ supported her assessment of Plaintiff's claims concerning the severity of her symptoms with reference to progress notes from AMPS dated December 22, 2016, indicating that her symptoms were improving, her tics were decreasing, and she was performing better academically. (AR 21, 286).  The progress notes also indicated that her symptoms were less frequent and less intense.  *Id.*  The ALJ also pointed to May 16, 2017, progress notes from AMPS which showed that Plaintiff's Tourette's symptoms improved and she no longer heard voices. (AR 292).  During a September 2017 visit, Plaintiff acknowledged that her symptoms were less frequent and less intense.  Plaintiff described no anxiety. (AR 296).  Another note from February 8, 2018, reported that Plaintiff felt better and experienced an overall decrease in symptoms. (AR 301).

1        Indeed, Plaintiff's December 2019 therapy notes from Dr. Crow reported that she only

2  needed therapy sporadically after continuous improvements in her symptoms and functioning.

3  (AR 500).  Although Plaintiff had an increase in symptoms after the loss of her father on March

4  12, 2020, she reported improvements in August 2020. *See* (AR 565, 583, 586). The Court finds

5  that the ALJ provided substantial evidence to support her conclusion that Plaintiff's symptoms are

6  not as debilitating as claimed.  Although there are instances where her symptoms have worsened,

7  such as when her father passed away, those symptoms appear to have improved significantly

8  overall and sometime after her following that event. More importantly, it is not the Court's role to

9  second-guess the ALJ's determination of Plaintiff's credibility.  *Tommasetti*, 533 F.3d at 1039.

10  Thus, since there is substantial evidence of improvement on the record, the ALJ provided clear

11  and convincing reasons to discredit Plaintiff's symptom testimony.

12        In addition, Plaintiff argues that the ALJ erred by relying on her activities of daily living

13  as a basis to reject her testimony.  (Doc. 21 p. 22-23).  But in fact, the ALJ may consider the

14  claimant's daily activities in making a credibility determination.  *Robles de Nunez v.*

15  *Commissioner of Social Security*, No. 1:21-cv-00618-SAB, 2023 WL 2839741, at *18 (E.D. Cal.

16  Apr. 7, 2023); *Diedrich v. Berryhill*, 874 F.3d 634, 642-43 (9th Cir. 2007); *Thomas v. Barnhart*,

17  278 F.3d 947, 958 (9th Cir. 2002). "[M]any home activities are not easily transferable to what

18  may be the more grueling environment of the workplace[.]" *Fair v. Bowen*, 885 F.2d 597, 603

19  (9th Cir. 1989). An inconsistency exists between a claimant's level of activities and her claimed

20  limitations if those activities have a bearing on the claimant's credibility.  *Reddick*, 157 F.3d at

21  722.

22        Thus, contrary to Plaintiff's argument, an ALJ may use daily activities in rendering an

23  adverse credibility finding.  *See Orn v. Astrure*, 495 F.3d 625, 639 (9th Cir. 2007).  First, daily

24  activities can form the basis of an adverse credibility finding if the activity contradicts the

25  claimant's testimony. *Id.*  Second, "daily activities may be grounds for adverse credibility finding

26  'if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the

27  performance of physical functions that are transferrable to a work setting.'" *Id.* (quoting *Fair*, 885

28  F.2d at 603).  The ALJ must make specific findings as to the daily activities and their

1   transferability to conclude that the claimant's daily activities warrant an adverse credibility

2   determination. *Orn*, 495 F.3d at 639.

3         The ALJ used Plaintiff's activities of daily living to reach her adverse credibility finding

4   in two ways. First, the ALJ found that her daily activities were inconsistent with her alleged

5   degree of functional imitations. (AR 22).  Plaintiff reported going to college, caring for her dogs,

6   doing housework, driving, shopping, doing photography, engaging in creative digital editing, and

7   spending time with friends, which is inconsistent with her alleged severity of disability.  *Id.*

8   (citing AR 183-93)  The ALJ found that Plaintiff's range of activities were more consistent with

9   her RFC than an inability to do all types of work.

10        The ALJ also found that although Plaintiff stated that she has difficulty with her memory,

11  completing tasks, concentration, understanding and following instructions, she graduated high

12  school with a 4.3 GPA. *Id*. citing (AR 204-215).  The ALJ found that Plaintiff maintained an

13  impressive GPA without more intensive special education services.  She further found that

14  Plaintiff could work on less demanding unskilled work given her success with college level

15  courses (with accommodations). *Id*. (citing AR 183-93, 204-15 280-316, AR 39).

16        The ALJ adequately identified inconsistencies between Plaintiff's allegations of anxiety,

17  issues with social interactions, coordination, distraction and concentration and her activities of

18  daily living.  She properly pointed to Plaintiff's spending time with friends, creative pursuits, high

19  academic achievement in both high school and college as evidence that her testimony was

20  inconsistent with a total inability to work. *See Garibay v. Berryhill*, 733 Fed. Appx. 908, 909 (9th

21  Cir. 2018) ("the ALJ did not err by citing Garibay's ability to earn a college degree during his

22  period of alleged disability when evaluating his testimony.  The ALJ acknowledged that Garibay

23  experienced difficulties completing this program; however, Garibay's ability to earn his degree

24  despite these difficulties still serves as grounds for discounting his claims of totally debilitating

25  impairment.") (quotations and citations omitted); *Thomas v. Berryhill*, 771 Fed. Appx. 750, 751

26  (9th Cir. 2019) (finding the ALJ properly concluded that disabling claims were inconsistent with

27  ability to obtain two-year community college degree).

28        The Court finds that the ALJ has provided clear and convincing reasons that are amply

16

1    supported by the record to reject Plaintiff's symptom testimony.

2        **B.      The ALJ's Assessment of RFC is Not Supported by Substantial Evidence**

3        Plaintiff next asserts that the ALJ erred in assessing her RFC in two regards.  First, she

4    argues that the ALJ improperly rejected her school records and educational accommodations,

5    which led the ALJ further to erroneously fail to include in her hypotheticals to the VE limitations

6    associated with those educational accommodations.  (Doc. 21 pp. 24-25; Doc. 27 pp. 8-9).  She

7    further argues that the ALJ failed to properly evaluate the treating evidence of record under 20

8    C.F.R § 404.1520c(c) as it pertains to Plaintiff's special education records and the opinions of

9    Drs. Garcia and Collins. (Doc. 21 pp. 25-26; Doc. 27 pp. 9-11).

10            **1. The ALJ Did Not Adequately Analyze Plaintiff's Accommodations**

11        Social Security Ruling ("SSR") 11-2p, *Titles II and XVI: Documenting and Evaluating*

12   *Disability in Young Adults* instructs ALJs to consider evidence from nonmedical sources "who

13   know and have contact with the young adult [and] can help [the ALJ] evaluate the severity and

14   impact of a young adult's impairment(s)." 2011 WL 4055665, at *5 (Sept. 12, 2011).  SSR 11-2p

15   identifies four categories of evidence that an ALJ should consider in determining a young adult's

16   functioning: (1) evidence concerning whether the young adult received special education and

17   related services; (2) evidence pertaining to any IEP formulated for the young adult, describing the

18   skills they needed to develop; (3) evidence pertaining to IEP transition goals, whether

19   transitioning to supervised and supported work and living settings, or independent ones; and (4)

20   considerations related to the fact that goals contained in an IEP may be set at an achievable level

21   to foster a sense of accomplishment, and "may be lower than what would be expected of a young

22   adult without impairments." *Id*. at *10-13.  Young adults are defined as "people between the ages

23   of 18 to approximately 25." *Id.* at *2. Since Plaintiff was 22-years old at the time the

24   Commissioner determined her benefits, SSR 11-2p is applicable in this case.  (AR 26).

25        SSR 11-2p is binding on ALJs.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Bray

26   v. Comm'r Soc. Sec. Admin*., 554 F.3d 1219, 1224 (9th Cir. 2009) (holding that Social Security

27   Rulings "do not carry the 'force of law,' but they are binding on ALJs nonetheless").  *E.g., E.M.

28   v. Kijakazi*, 591 F.Supp.3d 595, 621 (N.D. Cal. 2022) (remanding for further administrative

1    proceedings where ALJ failed to discuss claimant's special education records); *Barrios v. Colvin*,

2    No. CV 13-3319 AGR, 2016 WL 756457, at *7 (C.D. Cal. Feb. 24, 2016) (same).

3          Plaintiff argues "the hypotheticals presented to the Vocational Expert did not contain all

4    of Plaintiff's functional limitations," including specifically "the special accommodations that

5    Plaintiff received in her schooling."  (Doc. 27 p.8).  Plaintiff points to accommodations she

6    received in secondary school through her Section 504 Plan, such as periodic checks for

7    understanding and additional time for testing.   She further points to accommodations received in

8    college, including alternative testing locations, favorable seating location in classroom, and

9    receiving extra time for learning and for taking exams.  *Id.*  Plaintiff argues these

10   accommodations implicate work-related limitations the ALJ was required to include in hrt

11   hypotheticals to the VE.  *Id.* at 9.

12         The ALJ acknowledged the specific accommodations Plaintiff received both in secondary

13   school and in college.  (AR 20-21).  In considering the paragraph B criteria associated with

14   Plaintiff's ability to concentrate and maintain pace, the ALJ took into account that she "does

15   receive special accommodations in college classes." (AR 18).  Although the ALJ discounted the

16   significance of the accommodations because Plaintiff was "able to attend full time with only a

17   few withdrawals from classes and otherwise good grades," she did rely on them in part to

18   conclude Plaintiff's ability to concentrate and maintain pace was moderately impaired.  (AR 18-

19   19).  The ALJ further acknowledged the accommodations in considering Plaintiff's ability to

20   adapt and manage herself.  (AR 19).

21         The Court recognizes that the ALJ's consideration of Plaintiff's school accommodations

22   in connection with weighing the paragraph B criteria does not transfer to the ALJ's assessment of

23   a claimant's RFC.  However, just as she did in connection with the paragraph B criteria, the ALJ

24   also acknowledged the accommodations in her assessment of RFC.  She acknowledged Plaintiff's

25   504 Plan and its accommodations of "preferred seating, comprehension checks, 1.5 time for tests,

26   reminders, a laptop, and copies of lecture notes."  (AR 21) (citing high school educational

27   records, AR 210-16).  She also acknowledged the most recent accommodations Plaintiff received

28   in college, "such as a handwriting alternative, testing in a separate room with time and a half, and

seating toward the front of the classroom." (AR 20).  Without explanation, the ALJ assessed that Plaintiff's accommodations for college level courses "do not persuasively establish that she would need the same accommodations for less demanding unskilled work." (AR 22).  Thus, it is not the case as Plaintiff suggests that the ALJ ignored the accommodations – she merely came to a different conclusion than Plaintiff as to the necessary applicability of those accommodations in connection with her assessment of RFC.

In *E.M. v. Kijakazi*, the Court determined that the ALJ's lack of treatment of the claimant's educational accommodation records constituted an "apparent rejection of this entire category of evidence" in contravention of SSR 11-2p.  591 F. Supp.3d at 62.  *Cf. id*. ("The Court acknowledges that the ALJ was not required to discuss each opinion and/or finding in E.M.'s special education records on an individualized statement-by-statement basis.").  Similarly, in *Ka'deef M. v. Commissioner of Soc. Sec*., the Court characterized the ALJ's treatment of the plaintiff's school records as a "cursory rejection" when he labelled them "as irrelevant." No. 3:20-CV-787 (DJS), 2021 WL 295801, at *6 (N.D.N.Y. July 14, 2021).  While these cases do not stand for the proposition that an ALJ must in all cases present a VE with a claimant's educational accommodations and related limitations, they do stand for the proposition that an ALJ must examine a plaintiff's school accommodations in assessing the RFC.  *E.g., E.M*., 591 F. Supp.3d at 624 ("the ALJ was required by SSR 11-2p to discuss how E.M.'s participation in these programs – which constituted highly structured or supportive settings – impacted the ALJ's determination regarding his RFC.").  *Cf. id*. at 635 (court remanded but "decline[d] to direct the ALJ as to the specific limitations that must be included in the VE's reworked hypothetical on remand. The appropriate limitations will depend on the outcome of the remanded proceedings.").

In reviewing Plaintiff's specific accommodations here, it appears the ALJ concluded that they were not of the type that would impact work capability such that a VE would need to consider them in connection with her assessment of RFC.  However, this Court is unable to conclude that the ALJ's determination in this regard is supported by substantial evidence because the ALJ only acknowledged the accommodations and, without analysis or explanation, summarily concluded that they "do not persuasively establish that she would need the same accommodations

1    for less demanding unskilled work."  (AR 22).  *See, e.g.*, *Francisco J.M.M. v. Kijakazi*, No. CV

2    20-0137 AGR, 2022 WL 22234647, at *4-5 (C.D. Cal. Sept. 29, 2022) ("Although the ALJ

3    mentioned these accommodations, the ALJ's decision did not assess this evidence in terms of

4    Plaintiff's ability or inability to perform sustained work eight hours per day, five days per

5    week.").  Thus, while an ALJ in a particular case might reasonably conclude that particular

6    educational accommodations such as preferred seating and copies of lecture notes do not

7    reasonably correlate to necessary workplace accommodations, such a conclusion would require

8    the ALJ to document her analysis.  *See id.*; *Coppola v. Berryhill*, No. 18 Civ. 599 (HBP), 2019

9    WL 1292848, at *21-22 (S.D.N.Y. Mar. 21, 2019) ("Even in a low stress job with only simple,

10   routine tasks and few workplace changes, without the supports provided by his school

11   environment plaintiff's limitations with respect to punctuality and persistence would likely be

12   more pronounced. Thus, the ALJ's failure to *analyze* this evidence compromised his RFC

13   determination.") (emphasis added).

14        Particularly given that a binding ruling – SSR 11-2p – provides that a claimant's receipt of

15   "accommodations as part of his or her IEP or Section 504 plan[] may be an indication that he or

16   she has a work-related limitation" (SSR 11-2p, 2011 WL 4055665, at *8), it was incumbent on

17   the ALJ here to explain her rationale for concluding otherwise.

18        **2. The ALJ Erroneously Discounted Medical Records**

19        Plaintiff relatedly argues that the ALJ's RFC is not sufficiently supported because she

20   failed to properly evaluate the treating evidence of record under 20 C.F.R § 404.1520c(c) as it

21   pertains to the opinions of Drs. Garcia and Collins.  (Doc. 21 pp. 25-26; Doc. 27 pp. 9-11).

22        For claims filed on or after March 27, 2017, new regulations apply that change the

23   framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules*

24   *Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18,

25   2017); 20 C.F.R. § 404.1520c.  Under these regulations, the ALJ must consider and evaluate the

26   persuasiveness of all medical opinions or prior administrative medical findings from medical

27   sources.  20 C.F.R. § 404.1520(a) and (b).  The factors for evaluating the persuasiveness of

28   medical opinions and prior administrative medical findings include supportability, consistency,

relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.0520c(c)(1)-(5).

Supportability and consistency are the most important factors, and the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).  Supportability and consistency are defined as:

> Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive medical opinions or prior administrative medical finding(s) will be.

> Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or other prior administrative medical filing(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

This regulatory framework has displaced the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  However, under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The ALJ's explanation must explain how he or she considered the supportability and consistency factors.  *Id*. at 793.

Here, the ALJ assessed Dr. Garcia's opinion as follows:

> Nick Garcia, PhD evaluated the claimant over a three-day period in March 2016 to determine if the claimant meets the diagnostic criteria for [a]utism [s]pectrum [d]isorder.  Dr. Garcia interviewed and examined the claimant, reviewed medical records, and administered a battery of psychometric tests that resulted in the following scores: Verbal Comprehension 127, Perceptual Reasoning 127, Working Memory 111, Processing Speed 89, and Full Scale IQ

1
2
3
4
5
6

      119.   Dr. Garcia diagnosed the claimant with autism spectrum disorder, generalized anxiety disorder, and Tourette disorder per history.   Dr. Garcia recommended educational accommodations, medication, therapy, and a social skills group.   [AR  268-79, 594-605].   Dr. Garcia's opinion is somewhat persuasive because it is based on a thorough evaluation and consistent with the record as a whole.   However, the recommendations were directed towards the claimant's needs with regard to completing college level coursework and do not address, or persuasively correlate with, limitations related to performing unskilled work.

7   (AR 23).  As it pertains to Dr. Garcia's opinion, the ALJ adequately addressed the supportability

8   and consistency factors set forth in 20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ found that Dr.

9   Garcia's opinion is based on a thorough evaluation, which addresses the supportability prong and

10   that it was consistent with the record.  (AR 23).

11        However, as it pertains to the requirements set forth by SSR 11-2p (*supra*), the ALJ found

12   that "[a]lthough [claimant] has accommodations, accommodations for college level courses do

13   not persuasively establish that she would need the same accommodations for less demanding

14   unskilled work." (AR 23).  Although the ALJ found that Dr. Garcia's assessment did not

15   "persuasively correlate with" limitations related to performing unskilled work, it is unclear

16   whether she reached that determination by analyzing SSR 11-2p, or by improperly dismissing Dr.

17   Garcia's opinion because it addressed Plaintiff's college accommodations instead of work-related

18   impairments.  In short, the ALJ's conclusion *might* be supported by substantial evidence – but the

19   Court is unable to so deduce because the ALJ's conclusion is not explained and her analysis is not

20   articulated.

21        Turning to Dr. Collins' opinion, the ALJ found it less persuasive "because it was

22   performed about 10 years prior to the adjudicatory period and the recommendations relate to

23   childhood functioning." (AR 23).  The ALJ erred by not articulating the supportability and

24   consistency factors as required by the regulations.  In addition, the regulations define "special

25   education" as "instructional services provided to students through age 21 in primary and

26   secondary education under the Individuals with Disabilities Educational Improvement Act of

27   2004 . . ." SSR 11-2p, 2011 WL 4055665, at *5 n.19.  Thus, Dr. Collins' medical evaluation,

28   which Dr. Garcia incorporated in his favorable assessment of Plaintiff's college accommodations,

retained some relevant value despite being performed well before the adjudicatory period. Accordingly, the ALJ erred by discounting Dr. Collins' evaluation as too remote. *Julian E.F. v. Commissioner of Social Security*, No. 22-5980 SKV, 2023 WL 8110600, at *4 (W.D. Wash. Nov. 21, 2023) (finding harmful error where ALJ declined to consider a medical opinion as "too remote" in time and failed to discuss Plaintiff's limitations related to his ability to work). To the contrary, evidence of a young adult's functioning from school programs may "indicate how well a young adult can use his or her mental abilities to perform work activities." SSR 11-2p, 2011 WL 4055665, at *7; *Francisco J.M.M.*, 2022 WL 22234647, at *5 (finding ALJ erred by not assessing accommodation requiring a reduced courseload in terms of how it would affect Plaintiff's ability to perform sustained work).

The Court acknowledges that the ALJ was not required to discuss each opinion and/or finding in Plaintiff's special education records on an individualized statement-by-statement basis. *E.M.*, 591 F. Supp.3d at 622. Nor was the ALJ required to accept Drs. Garcia or Collins' medical opinions to be persuasive. Nor, for that matter, was the ALJ necessarily required to incorporate in her hypotheticals to the ALJ each and every educational accommodation Plaintiff received. However, given the ALJ's failure to acknowledge SSR 11-2p, her conclusion without analysis or comment that Plaintiff's college accommodations do not reasonably correlate to workplace limitations, and her discounting of Drs. Garcia and Collins, it appears to the Court that the ALJ errored by categorically rejecting Plaintiff's educational records and medical opinions based in part on educational accommodations without examining the factors outlined in SSR 11-2p.

Such error was harmful because it is not inconsequential to the ALJ's ultimate nondisability determinations. *See Tommasetti,* 533 F.3d at 1038. Having reviewed the entire record, the Court finds that the ALJ's rejection of Plaintiff's special education records and medical opinions based in part on her educational accommodations materially impacted the ALJ's decision.

The Court has considered the "credit-as-true" rule, which is applicable where (1) the record has been fully developed and further administrative proceedings are not useful; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant

testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. Here, as set forth above, the Court concludes the ALJ failed to sufficiently examine and analyze school records and medical opinions, and, thus, credit-as-true is inappropriate given the need for the ALJ to further develop the record and/or provide legally sufficient reasons for rejecting evidence. Accordingly, the undersigned will recommend that this action be remanded for further proceedings.

## IV. FINDINGS AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, IT IS HEREBY RECOMMENDED:

1. Plaintiff's motion for summary judgment (Doc. 21) be GRANTED;

2. The ALJ's decision be VACATED, and this matter be REMANDED for further proceedings consistent with this order; and

3. The Clerk of Court be DIRECTED to enter judgment in favor of Plaintiff Alexandra Madelyn Page and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." A failure to file objections within the specified time may result in waiver of that party's rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __January 30, 2024__                  _____
                                             UNITED STATES MAGISTRATE JUDGE